UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO BROADWAY, | |
| Plaintiff, | |
| v. | No. 23 C 1896 |
| WALMART, INC. and CBRE, INC., | Judge Thomas M. Durkin |
| Defendants. | |
| v. | |
| ARCTIC SNOW & ICE CONTROL, INC., | |
| Third-Party Defendants. | |

## MEMORANDUM OPINION AND ORDER

Antonio Broadway sued Walmart and its contractor CBRE, Inc., after Broadway slipped and fell on ice and snow outside a Walmart store. Walmart and CBRE then filed a third-party complaint against another contractor, Arctic Snow & Ice Control Inc. ("Arctic Snow"), which CBRE had contracted to remove snow and ice around the store. Walmart's complaint includes counts for "breach of contract" and "breach of indemnity." Arctic Snow has filed a motion to dismiss both counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 30. That motion is denied.

## Background

Walmart's and CBRE's complaint contains two counts. Count I is captioned "breach of contract," and alleges that Arctic Snow breached its "duty to exercise reasonable care in the monitoring, cleaning, and removal of snow and ice." R. 27 at 3

(¶ 11). Walmart and CBRE also allege that Arctic Snow "failed to procure insurance that provided additional insured benefits to both Walmart and CBRE as is required by and in breach" of their contract. *Id.* at 5 (¶ 18). Walmart and CBRE claim that based on Arctic Snow's alleged "negligence in contributing to and/or causing [Plaintiff Broadway's] injuries," they "are entitled to contribution from Arctic Snow . . . in an amount commensurate with [Arctic Snow's] pro rata share of fault pursuant to the Joint Tortfeasor Contribution Act." *Id.* at 5 (¶ 19).

Count II is captioned "breach of indemnity." Count II repeats that Arctic Snow breached its duty to remove snow, and alleges that the contract contains an indemnification clause providing that Arctic Snow,

> shall defend . . . indemnify, pay, save and hold [CBRE] harmless from and against any liabilities, damages, costs, expenses, suits, losses, claims, actions, fines and penalties (including, without limitation, court costs, reasonable legal fees and any other reasonable costs of litigation) . . . that [CBRE] may suffer, sustain or incur arising out of or in connection with . . . any alleged or actual personal injuries, including death or property damages resulting [from Arctic Snow's] work or presence on the Facilities or other work site, including but not limited to any negligent acts, errors or omissions, intentional misconduct or fraud of [Arctic Snow], whether active or passive, actual or alleged, whether in the provision of the Services, failure to provide any or all of the Services or otherwise;

R. 27 at 2-3 (¶ 8). On the basis of this clause, Walmart and CBRE claim that Arctic Snow is,

> obligated to indemnify CBRE for (a) *all* damages recited in the preceding paragraph incurred in the handling of the subject claim; and (b) *any sum* CBRE pays, is compelled to pay, or may be compelled to pass as a result of any

2

> settlement, judgments or other awards to the cargo
> interests in this matter.

*Id.* at 6 (¶ 23) (emphases added).[1] This paragraph of the complaint claims indemnity for *all* damages sought by Broadway. But the very next paragraph qualifies that claim by seeking not the entire liability but "an amount by way of contribution as would be commensurate with the degree of fault or misconduct attributable to Arctic Snow." *Id.* at 6 (¶ 24).

## Analysis

### I.    Indemnity

To the extent Walmart and CBRE claim indemnity for the *entire* liability alleged by Broadway, Arctic Snow argues that the Snow Removal Service Liability Limitation Act prohibits it. The Act provides that a clause in a "snow removal and ice control services contract is . . . void if it [requires the] service provider to indemnify a service receiver for damages resulting from the acts or omissions of the service receiver." 815 ILCS 675/10(1). Accordingly, the Act prohibits Arctic Snow—the "service provider"—from indemnifying Walmart and CBRE—the "service receivers"—for their own "acts and omissions" allegedly making them liable to Broadway. In the context of a similar statute, the Illinois Supreme Court has explained that the purpose of this kind of prohibition is to "foster . . . safety by preventing a party from insulating itself from liability through use of a contractual indemnification provision which may deter the exercise of ordinary care." *Virginia*

---

[1] There are no "cargo interests" at issue in this case, so it seems that this reference is an accidental cut and paste from a complaint in another case.

*Sur. Co. v. N. Ins. Co. of N.Y.*, 866 N.E.2d 149, 155 (Ill. 2007) (discussing the Illinois Anti-Indemnification Act which provides an analogous prohibition in construction contracts). In other words, the goal of the Act is to ensure that an entity, like Walmart or CBRE, that has a duty to maintain a safe premises—including reasonable removal of snow—retains legal liability for that duty and may not transfer it contractually.

In their brief, Walmart and CBRE argue that the Act should not bar their claim because they do not seek indemnification for liability based on their own conduct, but for the conduct of Arctic Snow. *See* R. 34 at 2 ([T]he Snow Removal Service Liability Limitation Act . . . does not apply because the acts or omissions that led to the alleged damages sustained by Plaintiff were committed by Arctic."). That argument is reflected in paragraph 24 of the complaint (quoted above) which states that the relief Walmart and CBRE seek is only "an amount by way of contribution as would be commensurate with [Arctic Snow's] degree of fault." To the extent it is Walmart and CBRE's intent to seek "indemnification" only for Arctic Snow's share of liability, that claim is not barred by the Snow Removal Service Liability Limitation Act. Several courts have applied a similar logic to the similar indemnity bar in construction contracts mentioned above. *See, e.g., Pierre Condo. Ass'n v. Lincoln Park W. Assocs., LLC.*, 881 N.E.2d 588, 593 (Ill. App. Ct. 1st Dist. 2007) ("[W]e read the disputed provision as requiring contribution, not indemnification. Accordingly, the anti-indemnity act is not implicated and the subject provision is not void as against public policy."); *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 973 (Ill. 1997) ("Because Stolt did not construe paragraph seven as relieving it of liability for its own acts or

4

omissions, that paragraph did not extinguish Stolt's incentive to exercise due care, and the primary purpose behind the Construction Contract Indemnification for Negligence Act was not implicated. Accordingly, paragraph seven is not void under the Act[.]").

Arctic Snow argues, however, that a claim limited to Arctic Snow's share of liability is not true indemnity but "partial indemnity" that "does not exist . . . under Illinois law." R. 30 at 4. According to Arctic Snow, a claim for "partial indemnity" is actually a claim for "contractual contribution," which is void and unenforceable if it is not "in the method that the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 35/1 *et seq.*, provides for." *Id.* It is true that Illinois courts have held that parties may not agree to limit their contribution obligations under Illinois law. *See*, *e.g.*, *Herington v. J.S. Alberici Construction Co.,* 639 N.E.2d 907, 911 (Ill. App. Ct. 5th Dist. 1994) ("We agree . . . that a cause of action based on contractual contribution cannot be allowed (at least without a good-faith-settlement provision) because it would run afoul of the good-faith-settlement and dismissal provisions of the Contribution Act."). However, it is also true that Illinois courts have held that parties *may* contract to *increase* their contribution obligations under Illinois law. *See*, *e.g.*, *Pierre Condo.*, 881 N.E.2d 588 at 595 ("[T]he issue concerned the right of the parties to contract away any *limitation* on the damages a negligent party may owe to another for common liability, [and] the [Illinois Supreme Court] made clear in answering the certified questions that the position of the third party seeking contribution from the employer was consistent with the Contribution Act."). In other words, parties may make

contracts regarding their contribution rights as long as those agreements are consistent with and do not run afoul of the Contribution Act.

Arctic Snow does not explain how the indemnity clause at issue here is contrary to the Contribution Act. Absent such an argument, the Court will not address whether the indemnity provision in the parties' contract violates the Contribution Act such that Count II must be dismissed.

## II.   Contribution

In any event, Walmart and CBRE's complaint also contains a "breach of contract" provision that seeks contribution pursuant to the Contribution Act, without regard to the contract's indemnity clause. Presumably, Walmart and CBRE captioned this contribution claim as a "breach of contract" because the basis for the contribution claim is Arctic Snow's breach of its contractual obligation to adequately remove snow and ice from the area where Broadway's injuries occurred.[2] This claim would remain even if the Court were to dismiss Walmart and CBRE's breach of indemnity claim. *See West v. Office Depot, Inc.*, 2020 WL 12432055, at *1 (N.D. Ill. Mar. 4, 2020) (dismissing a "contractual contribution" claim but noting that the third-party plaintiff had also brought a "statutory contribution" claim that was not at issue on the motion).

Arctic Snow argues that any claim, whether for indemnity or contribution, is not ripe because no judgment has yet been entered in Broadway's favor. It is certainly

---

[2] As Arctic Snow points out in its brief, Count I's caption as "breach of contract" is of no moment, because the "legal effect to be given instrument is not determined by label it bears or technical terms it contains." R. 30 at 6 (citing cases).

true that any relief for Walmart and CBRE is contingent upon a judgment being entered for Broadway. But Federal Rule of Civil Procedure 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "Rule 14 aims to promote judicial efficiency by enabling the consolidation of related claims into a single action, and to this end it allows for the assertion of third-party claims or counterclaims that might be too contingent to stand on their own." *Mills v. Hausmann-McNally, S.C.*, 2014 WL 129276, at *5 (S.D. Ind. Jan. 14, 2014); *see also Colton v. Swain*, 527 F.2d 296, 299 (7th Cir. 1975) ("That rule is designed to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted."). "Thus, third-party claims may be asserted when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party." *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 2015 WL 13650775, at *3 (N.D. Ill. Mar. 13, 2015) (quoting 6 Wright & Miller, FED. PRAC. & PROC. CIV. § 1446 (3d ed. 2014)). "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is . . . indemnity [or] contribution[.]" *Id.* That is what Walmart and CBRE have pled here, so their claims are ripe.

## Conclusion

Therefore, Arctic Snow's motion to dismiss [30] is denied. To the extent Walmart and CBRE continue to pursue a claim under the contract's indemnity clause,

7

rather than a statutory contribution claim, the denial of the motion is without prejudice to again moving to dismiss Count II based on the argument that the indemnity clause is contrary to Illinois's Joint Tortfeasor Contribution Act.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 10, 2024

8